UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ELAINE CAROL LITTLE,

Plaintiff,

v.  ACTION NO. 2:12cv300

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

Defendant.

# UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brought this action under 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") that denied Plaintiff's claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act.

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by order of reference, dated August 10, 2012. This Court recommends that the decision of the Commissioner be VACATED and the case be REMANDED for further administrative proceedings.

## I. PROCEDURAL BACKGROUND

The plaintiff, Elaine Little ("Plaintiff"), filed an application for DIB on August 18, 2008,

---

[1] The Commissioner of the Social Security Administration has changed from Michael Astrue to Carolyn Colvin. It is ORDERED that the style of the case shall be deemed amended to substitute as the sole respondent in this proceeding Carolyn W. Colvin, Acting Commissioner of Social Security.

alleging he had been disabled since July 29, 2008. R. 82-83.[2] The application stemmed from a transient ischemic attack ("TIA")[3] and other health issues. The Commissioner denied Plaintiff's application, both initially on October 16, 2008 (R. 44-48), and upon reconsideration on June 19, 2009 (R. 53-58).

At Plaintiff's request, a hearing before an Administrative Law Judge ("ALJ") took place on May 11, 2010, and an impartial vocational expert testified. R. 22-41. On June 16, 2010, the ALJ issued a decision denying Plaintiff's claim. R. 8. On March 30, 2012, the Appeals Council denied Plaintiff's request to review the ALJ's decision, making the ALJ's decision the Commissioner's final decision. R. 1-6.

Having exhausted all administrative remedies, Plaintiff filed a complaint with this Court on May 31, 2012. ECF No. 1. Defendant filed an Answer to the Complaint on August 9, 2012. ECF No. 4. On October 18, 2012, an Order was entered directing the parties to file Motions for Summary Judgment. ECF No. 7. Plaintiff's Motion for Summary Judgment, or in the Alternative, Motion for Remand was submitted on November 7, 2012 (ECF Nos. 8 & 9). Defendant Commissioner's Motion for Summary Judgment was filed on January 23, 2012. ECF No. 11. On January 7, 2013, Plaintiff filed her Reply to Defendant's Motion for Summary Judgment. ECF No. 13. As neither counsel in this case has indicated special circumstances requiring oral argument in this matter, the case is deemed submitted for a decision based on the memoranda.

## II. FACTUAL BACKGROUND

Plaintiff was born in 1948 and was sixty years old at her date last insured. R. 25, 86.

---

[2] Page citations are to the administrative record previously filed by the Commissioner.
[3] TIA is brief period during which the brain does not receive sufficient blood, which produces stroke symptoms that usually resolve within 24 hours. 6 J.E. Schmidt, M.D., *Attorneys' Dictionary of Medicine and Word Finder Th-Z* T-200 (2010).

2

Plaintiff is a high school graduate (R. 105), and she last worked as a data entry operator and as a teacher's assistant. R. 25, 32, 37-38, 101. Plaintiff filed her application for DIB on August 18, 2008, alleging disability as of July 29, 2008, due to a mini-stroke. R. 82-83, 100. Plaintiff's last date insured was September 30, 2008. R. 11, 86.

On July 30, 2008, Plaintiff was admitted to Sentara Healthcare after an episode of intense confusion that lasted for 5 to 6 minutes R. 166. Although an MRI was negative for transient ischemic attack (TIA), Amaresh R. Vanga, M.D., believed that Plaintiff could have had a TIA which was undetected or too small to be detected by the MRI. R. 166. Dr. Vanga treated Plaintiff's episode like it was TIA. R. 166. Along with this treatment, Plaintiff was found to have high cholesterol. R. 166. She was prescribed aspirin for the TIA, and at the time she was also using Synthroid and Zocor. R. 166-170. Plaintiff was discharged on July 31, 2008 with a diagnosis of TIA, and ordered to follow-up with Michael G. Charles, M.D., her primary care physician. R. 166, 181.

Dr. Charles evaluated Ms. Little at a follow-up on August 27, 2008. R. 364. She reported she was doing well with no chest pain, no abdominal pain, no headaches and no shortness of breath, but she reported having some muscle pain since the episode. R. 364. On October 27, 2008, however, Ms. Little complained of insomnia and stress. R. 359. Dr. Charles noted that this was a new condition that Ms. Little had not suffered from previously. R. 359. Xanax was prescribed. R. 361.

On December 30, 2008, Plaintiff informed Dr. Charles that she had problems with concentration, focusing, and handling stress since her episode. R. 247. She also reported some emotional lability, mild cramping of the left hand, and a history of arthritis. *Id.* Dr. Charles diagnosed TIA, hypercholesterolemia, hypothyroidism, history of breast cancer, and

3

degenerative joint disease. R. 249. She was prescribed Xanax, Zocor, Synthroid, and Naprosyn. R. 250.

Dr. Charles completed a Multiple Impairment Questionnaire dated December 30, 2008. R. 186-193. He diagnosed TIA, history of breast cancer, low thyroid, and high cholesterol. R. 186. Dr. Charles wrote that Plaintiff's prognosis was fair. R. 186. Clinical findings included confusion at first TIA episode, inability to handle stress, concentration problems, and occasional left hand cramping. R. 186. Dr. Charles cited to hospitalization records from her TIA that provided diagnostic support for the diagnoses. R. 187. Dr. Charles concluded that Plaintiff had no pain. R. 187-188. Her fatigue was rated as moderate, 5 on a 10-point scale, and the doctor did not find any exertional limitations. R. 188-190.

Dr. Charles stated that Ms. Little's symptoms would likely increase in a competitive work environment. R. 190. He noted that Plaintiff also suffered from emotional lability and crying spells since her TIA that contributed to her functional limitations. R. 191. Dr. Charles wrote that Ms. Little is not a malingerer and that she was incapable of handling even low stress work. R. 191. Dr. Charles stated that Ms. Little's symptoms began with her episode and that based on the on-going nature of the impairments, he expected the impairments would last for more than twelve months. R. 191-192.

On December 30, 2009, Dr. Charles completed a second, partially completed, Multiple Impairment Questionnaire to supplement his previous report that did not address Ms. Little's exertional impairments. R. 297. Therein, the doctor opined that Ms. Little was limited exertionally to sitting 2 hours total and standing/walking 1 hour total in an 8-hour workday, and that it was medically recommended that Plaintiff not stand or walk continuously in a work setting. R. 301-302. He also opined that Plaintiff would need to be able to get up and move

4

around every hour for at least five to ten minutes. R. 301-302. Finally, Dr. Charles opined that Plaintiff could lift/carry 10 pounds occasionally. R. 302.

In a narrative report dated February 4, 2009, Dr. Charles doctor noted that since his last report Plaintiff had tried to return to work, but had problems concentrating and focusing, and was unable to handle stress due to emotional lability. R. 246. Dr. Charles opined that Plaintiff was unable to perform her job indefinitely as a result of these symptoms. R. 246.

In a letter dated August 11, 2009, Dr. Charles provided an additional narrative report. R. 225. He noted that Plaintiff continued to have problems from her episode, including situations where she repeats herself. R. 225. Plaintiff was seen for regular follow-ups of her conditions on September 11, 2009, October 20, 2009 and December 9, 2009. R. 312-314, 318-319, 325. No changes in her TIA were noted. *Id.*

Plaintiff went to Marie Holland, M.D., on September 21, 2009, on a referral from Dr. Charles for persistent symptoms related to possible past TIA. R. 294. Plaintiff told Dr. Holland that, according to her husband, she continued to have episodes of repeating the same conversation multiple times in one day. R. 294. Dr. Holland reported Plaintiff was normal in most of her physical examination and found generally normal results in Plaintiff's neurological examination. R. 295-96. Dr. Holland noted that Plaintiff had anxiety and sleep disturbances. R. 295.

Dr. Holland assessed that Plaintiff had a transient alteration of awareness. R. 296. She stated that it was possible that Plaintiff's episode in July 2008 was a TIA, but there had been no focal neurologic deficits, such as weakness. R. 296. Dr. Holland stated another possibility was that Plaintiff had a complex partial seizure and that it was less likely that Plaintiff had transient global amnesia because of the way it developed and its short duration. R. 296. Dr. Holland also

5

noted that she discussed with Plaintiff that "TIA would not be a reason for pursuing disability." R. 296.

On October 16, 2008, Carolina Longa, M.D., a State agency medical consultant, filed a Case Analysis after she reviewed Plaintiff's file at the initial determination level. R. 42, 185. Dr. Longa opined that based on the evidence in the record, Plaintiff's impairment was non-severe. R. 185.

**B. Plaintiff's Statement and Hearing Testimony**

At the ALJ hearing, Plaintiff testified that she suffered a TIA in July 2008 that resulted in an episode of confusion, but she did not recall what happened on the day of the episode after taking a morning shower. R. 26. Plaintiff testified that following the episode, she was prescribed Zocor and told to take an aspirin every day. R. 28. She stated that she continues to have issues with poor sleep, sometimes waking between 1:00 a.m. and 1:30 a.m. and being unable to sleep the remainder of the night. R. 28. In discussing these sleep issues with her doctor, she was started on Xanax for anxiety attacks, but it made her feel "jittery." R. 28-29. Instead of Xanax, she takes Tylenol PM for these problems. R. 28. When asked how she was doing with the TIA now, she replied, "I'm doing pretty good with that." R. 26.

Ms. Little also reported suffering from arthritis[4] and taking Naproxen and Skelaxin for her symptoms. R. 30. When asked how she is doing with her arthritis, Plaintiff said "I'm not doing very well with that arthritis." R. 31. She told the ALJ that she walks for about fifteen minutes at a time to help try to keep her joints moving. R. 32. Ms. Little described arthritic pain in her fingers and back down into her right knee, and stated that she has pain on nearly a daily basis. R 33. Plaintiff stated that she has about three bad days in a seven-day week R. 34. On bad

---

[4] Dr. Charles referred to this condition as degenerative joint disease in some reports. *See* R. 31 (attorney discussing this issue with ALJ).

6

days, she said that she cannot put any weight on her right leg, so she lies in bed for about an hour before she gets up. R. 34. On those days, she said that she stretches, takes a shower, eats, and tries to relax for the rest of the day. R. 34. Plaintiff testified that she has stiffness in her right hand at times and sometimes has difficulty opening jars. R. 35.

Plaintiff also testified that her husband and son do most of the heavy housework. R. 36. She did state that she tries to do some light laundry, a little bit of the dusting, and tries to keep the kitchen clean. R. 36. Ms. Little estimated that the most she can lift or carry is five pounds at a time, and that she can sit for one to two hours. R. 37.

Plaintiff testified that she left her job as a data entry operator voluntarily to relocate from New York to another location. R. 32-33, 39. At her job as a data entry operator, Plaintiff would make computer data entries regarding stocks and bonds. R. 38-39.

Vocational Expert, Robert Edwards, testified at the hearing. He classified Ms. Little's past relevant work as a data-input operator as a sedentary semi-skilled job, and her work as a teachers' assistant as a light skilled job. R. 37.

### III. **STANDARD OF REVIEW**

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2011); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as 'a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). It consists of "more than a mere

scintilla" of evidence, but may be somewhat less than preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

When reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589; *Hays*, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, unless the decision was reached by means of an improper standard or misapplication of the law. *Perales*, 402 U.S. at 390; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980)).

Thus, reversing the denial of benefits is appropriate only if either (A) the ALJ's determination is not supported by substantial evidence on the record, or (B) the ALJ made an error of law. *Coffman,* 829 F.2d at 517.

## IV. <u>ANALYSIS</u>

To qualify for a period of disability and DIB under section 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for DIB and a period of disability, and be under a "disability" as defined in the Act. The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the inability to do any substantial gainful activity, by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505(a)

(2012); *see also* 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A) (2012). To meet this definition, the claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.

In evaluating disability claims, the regulations promulgated by the Social Security Administration provide that all material facts will be considered to determine whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The ALJ must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals a condition contained within the Social Security Administration's official listing of impairments, (4) has an impairment that prevents her from past relevant work, and (5) has an impairment that prevents her from any substantial gainful employment. An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability. This analysis is set forth in 20 C.F.R. § 404.1520.

"When proceeding through this five step analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, and the claimant's educational background, age, and work experience." *Schnetzler v. Astrue*, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. *Hays*, 907 F.2d at 1456.

In reviewing the record, the Court RECOMMENDS that the case be REMANDED for consideration of the Plaintiff's credibility.

**A. ALJ's Decision**

In this case, the ALJ found the following regarding Plaintiff's condition. First, Plaintiff

last met the insured status requirements of the Act on September 30, 2008. R. 13. Second, Plaintiff did not engage in substantial gainful activity during the period from her alleged onset of disability on July 29, 2008, through her date lasted insured on September 30, 2008. R. 13. Third, through her date last insured, Plaintiff's degenerative joint disease of the back and knee constituted a severe impairment. R. 13. The ALJ also found that Plaintiff's TIA did not meet the requirements to be considered severe because it was a "short period of intense mental confusion." R. 13. Fourth, through her date last insured, Plaintiff did not have an impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 14. Fifth, through her date last insured, Plaintiff has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a). R. 14. Sixth, Plaintiff was capable, at her date last insured, of performing past relevant work as a data entry operator. R. 17. These findings led the ALJ to conclude Plaintiff was not under a disability at any time between the alleged onset date of July 29, 2008, through the date last insured of September 30, 2008. R. 17.

In her Memorandum in Support of her Motion for Summary Judgment, Plaintiff alleges the ALJ made three errors in this case. ECF No. 10. First, Plaintiff argues that the ALJ erred by failing to follow the treating physician rule and by not properly considering Plaintiff's anxiety. *Id.* at 6. Second, Plaintiff claims that the ALJ failed to properly evaluate her credibility. *Id.* at 12. Third, Plaintiff contends that the ALJ erred in finding that Plaintiff could perform her past work as a data entry operator. *Id.* at 15. In reviewing the parties' briefs, the Court finds that the ALJ made an error of law, and therefore, recommends that the case be REMANDED.

### C. Credibility Assigned to Statements of Plaintiff

Although the Plaintiff alleged three errors by the ALJ, the Court finds that an error of law

occurred when the ALJ did not give clear and acceptable reasons for his determination of Plaintiff's credibility. Therefore, the Court only discusses this issue and will not reach the merits of the other two assignments of error.

Plaintiff's second assignment of error is based on the ALJ's credibility determination of Plaintiff's subjective statements. The residual function capacity (RFC) determination must incorporate not only impairments supported by objective medical evidence, but also those impairments based on credible complaints made by the claimant. The ALJ uses a two-step analysis in evaluating a claimant's subjective complaints. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). First, the ALJ must determine whether there is an underlying medically determinable impairment that could reasonably produce the claimant's pain or symptoms. *Id.* If the underlying impairment could reasonably be expected to produce the claimant's pain, the ALJ must then evaluate the claimant's statements about the intensity and persistence of the pain, as well as the extent to which it affects the individual's ability to work. *Id.* at 595.

The ALJ's evaluation must take into account *all available* evidence, including a credibility finding of the claimant's statements regarding the extent of the symptoms, and the ALJ must provide specific reasons for the weight given to the claimant's subjective statements. *Id.* at 595-96. Social Security Ruling 96-7p states that the evaluation of a plaintiff's subjective complaints must be based on the consideration of *all* the evidence in the record, including, but not limited to: (1) medical and laboratory findings, (2) diagnoses and medical opinions provided by treating or examining physicians and other medical sources; (3) statements from both the individual and treating or examining physicians about the claimant's medical history, treatment, response, prior work record, and the alleged symptoms' effect on the ability to work.

In this case, Plaintiff claims that the ALJ applied an incorrect standard in finding that

Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible. Pl.'s Mem. in Supp. of Mot. for Summ. J. 13. Plaintiff argues that the ALJ erred by evaluating Plaintiff's statements against the RFC determined by the ALJ, as opposed to the evidence of record. *Id.* The Commissioner defends the decision by asserting that a full review of the ALJ's decision shows that the ALJ considered the entire record. Def.'s Mem. in Supp. of Mot. for Summ. J. 20-23.

In making his credibility determination, the ALJ acknowledged that Plaintiff's impairments could reasonably be expected to cause her alleged symptoms. R. 15. With no other explanation provided, the ALJ then stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are *inconsistent with the above residual functional capacity assessment*." *Id.* (emphasis added).

This final statement of the ALJ appears as boilerplate language in any number of decisions by ALJs throughout the United States. *See e.g., Bjornson v. Astrue*, 671 F.3d 640, 644-645 (7th Cir. 2012); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010); *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004); *Racey v. Astrue*, 2013 WL 589223, at *6 (W.D. Va. Feb. 13, 2013). The Seventh Circuit in particular has been critical of the use of this verbiage, going so far as to call it "meaningless boilerplate [language]." *Parker*, 597 F. 3d at 922.

The use of this boilerplate language creates two problems. First, the Regulations instruct the ALJ to evaluate the consistency of a plaintiff's statements against all of the evidence of record, and not against just the ALJ's own RFC assessment. 20 C.F.R. § 404.1529(c)(4); *see also Maske v. Astrue*, 2012 WL 1988442, at *2-3, 14 (N.D. Ill. May 31, 2012) (finding remand to be appropriate where an ALJ discounted a plaintiff's credibility because her testimony did not mesh with the RFC determination, as the "ALJ's credibility analysis fail[ed] to build the required

12

logical bridge between the evidence and the conclusion that her testimony was not credible"); *Spratt v. Astrue*, 2012 WL 1110018, at *23-24 (N.D. Iowa April 2, 2012) ( "[T]he 2010 decision [of the ALJ] is devoid of any reasons for his credibility determination. . . . The ALJ simply concluded that [Plaintiff's] testimony was 'inconsistent with the above residual functional capacity assessment. . . .' [T]he ALJ has failed in his duty to make an express credibility determination, detailing the reasons for discrediting the testimony, and setting forth inconsistencies in the record."). By stating that Plaintiff's statements were not credible based on the ALJ's RFC determination, the ALJ's own statement leads the Court to believe that the ALJ failed to consider all of the evidence on the record as required by the Agency's regulations.

The second problem, which is correlated to the first, is that the ALJ's conclusion regarding Plaintiff's credibility, indicates that the ALJ made his RFC determination before taking into account Plaintiff's credibility. Therefore, the ALJ could not have made his RFC determination using all of the information on the record, because he had not yet made his credibility determination for Plaintiff's statements. *See Bjornson*, 671 F. 3d at 645 ("A deeper problem is that the assessment of a claimant's ability to work will often . . . depend[] heavily on the credibility of her statements."). The Court agrees with the Seventh Circuit that the ALJ stating that the he first made the RFC determination and then made a credibility determination "gets things backwards." *Id.* To put it another way, "[b]y resorting to this form of circular reasoning, the ALJ credibility finding is simply an assertion by him that his functional capacity assessment is a true statement and any contrary statement is, therefore, untrue. Manifestly, an ALJ's credibility statement cannot be used to prove itself." *Duff v. Astrue*, 5:11cv103, Dkt. No. 18, at *9 (W.D. Va. Nov. 30, 2012) (PACER).

In reviewing precedent within the Fourth Circuit, the Court found that both Judge B.

13

Waugh Crigler and Judge James Welsh of the Western District of Virginia recently dealt with this issue. *See Racey*, 2013 WL 589223, at *6 (Judge Crigler); *Duff*, 5:11cv103, ECF No. 18, at *9 (Judge Welsh). Judge Welsh recommended, and his recommendation was adopted, that the case be remanded based on the ALJ's use of this boilerplate language because this language allows the ALJ to assume what he wishes to prove. *Duff*, 5:11cv103, ECF No. 18, at *9. Judge Crigler joined Judge Welsh and the Seventh Circuit in criticizing the use of this boilerplate language, but Judge Crigler found that "it [was] clear in the pages that follow the boilerplate language in this case, the [ALJ] considered the evidence of the record and provided sufficient support for both his RFC finding and his determination of plaintiff's credibility regarding the limiting effects of her condition." *Racey*, 2013 WL 589223, at *6.

In the present case, the Court is not comfortable finding that the ALJ considered all of evidence prior to making an RFC and credibility determination. As Judge Welch found, the boilerplate language is a logical fallacy and provides no evidence to support the ALJ's decision. Although there may be permissible grounds for an adverse credibility finding, the ALJ simply concluded Plaintiff's statements were not credible and failed to fully explore the medical evidence on record for his determination, as required by the Social Security Rules. Indeed, a "bare conclusion that [Plaintiff's] statements lack credibility because they are inconsistent with 'the above residual functional capacity assessment' does not discharge the duty to explain." *Kotofski v. Astrue*, 2010 WL 3655541, at *9 (D.Md. Sept. 14, 2010). The Court is not satisfied that the ALJ met his duty to explain. Further, as outlined above, the Court cannot find the RFC determination in this case was made with full consideration of all the evidence on record. Therefore, it would be illogical for the Court to accept the ALJ's conclusion that Plaintiff's statements are not credible because they are inconsistent with the RFC determination.

The Commissioner's motion outlines evidence, which potentially contradicts Plaintiff's testimony and may indeed render the complaints not credible. *See* Def.'s Mem. Supp. of Mot. Summ. J. 20-22. The Court, however, may remand in situations "where credibility determinations and inference drawing is required of the ALJ." *Barry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982). Further, a court "should not hesitate to remand [such a] case for further findings or a clearer explanation for the decision." *Id.* at 469. Despite the Commissioner's argument, the Court cannot conclude that, in issuing his denial decision, the ALJ considered all relevant evidence in finding Plaintiff's statements not credible.

The ALJ's own statement indicates, by its plain language, that the ALJ made his RFC determination prior to his credibility determination. This demonstrates that the ALJ failed to consider all of the evidence in the record before making his credibility determination and before making his conclusion regarding Plaintiff's RFC. By not examining all of the evidence, the ALJ erred. *See Craig*, 76 F.3d at 594 (quoting 20 C.F.R. § 404.1529, which require ALJs to consider all evidence on the record). Therefore, the Court RECOMMENDS that the ALJ's decision be VACATED and REMANDED.

## V. **RECOMMENDATION**

Based on the foregoing analysis, it is the recommendation of this court that Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand (ECF Nos. 8 and 9) be GRANTED to the extent that it seeks remand of the Commissioner's decision and DENIED to the extent that it seeks reversal and an entry of an order directing the award of benefits. The Court further recommends that Defendant's Motion for Summary Judgment (ECF No. 11) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED for further administrative proceedings consistent with this Report and Recommendation.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this Report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.), *cert. denied*, 467 U.S. 1208 (1984).

/s/<br>
Tommy E. Miller<br>
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
March 12, 2013

**CLERK'S MAILING CERTIFICATE**

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Joel C. Cunningham, Jr.
Law Offices of Binder and Binder
120 Edmunds Boulevard
P.O. Box 459
Halifax, VA 24558

Susan Lynn Watt
United States Attorney's Office
101 W. Main St., Suite 8000
Norfolk, VA 23510

                                        By _____
                                            Fernando Galindo, Clerk
                                            Deputy Clerk

                                            _____, 2013