IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED

JUN -7 2013

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**ELAINE CAROL LITTLE,**

    Plaintiff,

v.                                   **CIVIL ACTION NO. 2:12cv300**

**CAROLYN W. COLVIN,**
Acting Commissioner of Social Security[1],

    Defendant.

## *MEMORANDUM OPINION AND ORDER*

This matter is before the Court on Defendant's objections to the Magistrate Judge's Report and Recommendation. Having reviewed the relevant pleadings, this matter is now ripe for decision.

### I. FACTUAL AND PROCEDURAL HISTORY

On August 18, 2008, Elaine Carol Little ("Plaintiff" or "Claimant") filed an application for disability insurance benefits ("DIB") with the Social Security Administration ("SSA"). In her application, Plaintiff alleged that she has been disabled since July 29, 2008. The Plaintiff alleges that her disability is a result of a Transient Ischemic Attack ("TIA") and subsequent, related health issues. On October 16, 2008, the Commissioner of Social Security denied the Plaintiff's application for benefits. After reconsideration of its decision, the Commissioner reaffirmed the denial of benefits on June 19, 2009. Consequently, Plaintiff sought and received a hearing before a Social Security Administrative Law Judge ("ALJ") on May 11, 2010. On June

---

[1] The Acting Commissioner of the Social Security Administration ("Commissioner") has changed from Michael Astrue to Carolyn Colvin.

16, 2010, the ALJ issued a decision denying Plaintiff's DIB claims and on March 30, 2012, the Social Security Administration's Appeals Council, the final review within the agency on Plaintiff's claims, rejected the her appeal.

Having exhausted all administrative remedies within the Social Security Administration, Plaintiff filed a complaint with the Court seeking review of the Administrative Law Judge's opinion. On August 10, 2012, the Court entered an order pursuant to 28 U.S.C. § 636(b)(l)(B) directing United States Magistrate Judge Tommy E. Miller to conduct hearings, including evidentiary hearings, and to submit to the Court a report containing proposed findings of facts and recommendations. On October 18, 2012, Judge Miller ordered the parties to file Motions for Summary Judgment and engage in required briefing. On March 12, 12013, Judge Miller filed his Report and Recommendation ("R&R") with the Court. In accordance with 28 U.S.C. § 636(b)(1), the parties were given fourteen (14) days from the mailing date of the R&R to object to its contents with the Court. On March 26, the Defendant filed an objection to the R&R, to which the Plaintiff failed to respond. On April 10, 2013, this matter was referred to chambers for judicial decision.

## II. LEGAL STANDARD

When considering a party's objections to the findings and recommendations of the Magistrate Judge, a district judge "must determine de novo any part of the Magistrate Judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also Wimmer v. Cook*, 774 F.2d 68, 73 (4th Cir. 1985) ("[A]ny individual findings of fact or recommendations for disposition by [the Magistrate Judge], if objected to, are subject to final *de novo* determination...by a district judge...."). Under *de novo* review, the Magistrate Judge's R&R carries no presumptive weight, and the district court may accept, reject or modify the report, in

whole or in part, and may recommit the matter to the Magistrate Judge with instructions. *Halloway v. Bashara*, 176 F.R.D. 207, 209-10 (E.D. Va. 1997); Fed. R. Civ. P. 72(b)(3) ("The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the Magistrate Judge with instructions."). When conducting this *de novo* determination, a district court judge must give "fresh consideration" to the relevant portions of the Magistrate Judge's R&R. *United States v. Raddatz*, 447 U.S. 667, 675 (1980).

A court reviewing a decision made under the Social Security Act must determine whether the factual findings are supported by substantial evidence and were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* (citations omitted). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Id.* The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

### III. DISCUSSION

The Commissioner objects to Judge Miller's conclusion that the Administrative Law Judge failed to adequately support his credibility determination regarding Plaintiff's statement on her symptoms, given his use of "boilerplate" language, use of which has been disfavored in a number of courts. Under existing SSA regulations, the Commissioner (or the ALJ) must make a series of sequential, fact determinations to establish whether a claimant is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. As the regulations require, the ALJ must carefully consider

3

(1) whether the disability claimant is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that equals a condition contained within the Social Security Administration's official listing of impairments; (4) has an impairment that prevents her from past relevant work; and (5) has an impairment that prevents her from any substantial gainful employment. If a claimant is engaged in substantial gainful activity, the analysis stops and benefits will be denied. If a claimant has no severe impairment or if a claimant does have a severe impairment but said impairment does not prevent her from undertaking past relevant work, the analysis stops and benefits will be denied. However, if a claimant has an impairment that equals a condition contained within the Social Security Administration's official listing of impairments and that impairment prevents her from any substantial gainful employment, benefits will be granted.

In seeking review of the ALJ's opinion, the Plaintiff argues that the ALJ made three errors. First, the Plaintiff asserts that the ALJ erred by failing to follow the treating physician rule and by not properly considering the Plaintiff's anxiety. Second, that the ALJ failed to properly evaluated her credibility. Third, that the ALJ erred in finding that the Plaintiff could perform her past work as a data entry operator. Judge Miller determined that only the second alleged error warranted addressing and thus did not address the other two assignments of error.

The operative assignment of error is based on the ALJ's determination that the Plaintiff's subjective statements, relevant to the required residual function capacity determination, lack credibility. Residual function capacity determination, as Judge Posner notes is "the bureaucratic term for ability to work." *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). As part of making the Residual Function Capacity determination, an ALJ must consider both objective medical facts on the record as well as credible complaints made by the claimants. Under United

4

States Court of Appeals for the Fourth Circuit ("Fourth Circuit") precedent, ALJs must undertake this analysis in two steps. *See Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Step One involves the ALJ reviewing the available evidence to determine whether the relevant underlying medical impairment could reasonably cause the claimant's symptoms. *Id.* Step Two requires that if the ALJ finds the underlying medical impairment could reasonably cause the claimant's symptoms, he must then evaluate the claimant's statements regarding the symptoms. *Id.* As the Social Security Administration's policy dictates with respect to this second step:

> [O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements *based on a consideration of the entire case record.* This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. This requirement for a finding on the credibility of the individual's statements about symptoms and their effects is reflected in 20 CFR 404.1529(c)(4) and 416.929(c)(4). These provisions of the regulations provide that an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.

*SSR 96-7p: Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements)*, 1996 SSR LEXIS 4, July 2, 1996 (emphasis added).[2]

---

[2] *See also*, 20 CFR 404.1529(c)(4) ("How we determine the extent to which symptoms, such as pain, affect your capacity to perform basic work activities. In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and

Plaintiff claims that the ALJ failed to comply with the Administration's Policy as well as the law in this Circuit when he, as evidenced by the use of "boilerplate" decision template language[3], judged the Plaintiff's statements against this own Residual Function Capacity determination, rather than the full record. This is not the first time the Social Security Administration and its ALJs have found themselves at odds over the use of this boilerplate language. Judge Posner of the United States Court of Appeals for the Seventh Circuit ("Seventh Circuit") addressed the issue extensively last year:

> Reading the administrative law judge's opinion, we first stubbed our toe on a piece of opaque boilerplate near the beginning, where, after reciting Bjornson's description of her medical condition, the opinion states: "After careful consideration of the evidence, the undersigned [administrative law judge] finds that the claimant's medically determinable impairments would reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." The government's brief describes this passage as a "template," by which it means a passage drafted by the Social Security Administration for insertion into any administrative law judge's opinion to which it pertains. This "template" is a variant of one that this court (and not only this court) had criticized previously—that "after considering the evidence of record, the undersigned finds that claimant's medically determinable impairments would reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." In *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), we called this "meaningless boilerplate. The statement by a trier of fact that a witness's testimony is 'not entirely credible' yields no clue to what weight the trier of fact gave the testimony" (emphasis in original); see also *Punzio*

---

other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.").

[3] The boilerplate language at issue is as follows: "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms and that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."

*v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011); *Martinez v. Astrue*, 630 F.3d 693, 696-97 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010). "Such boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible. More troubling, it appears that the Commissioner has repeatedly been using this same boilerplate paragraph to reject the testimony of numerous claimants, without linking the conclusory statements contained therein to evidence in the record or even tailoring the paragraph to the facts at hand, almost without regard to whether the boilerplate paragraph has any relevance to the case." *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (citation omitted).

*Bjornson v. Astrue*, 671 F.3d 640, 644-645 (7th Cir. 2012). As Judge Posner further notes:

One problem with the boilerplate is that the assessment of the claimant's "residual functional capacity" (the bureaucratic term for ability to work) comes later in the administrative law judge's opinion, not "above"—above is just the foreshadowed conclusion of that later assessment. A deeper problem is that the assessment of a claimant's ability to work will often (and in the present case) depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be. In this regard we note the tension between the "template" and SSR 96-7p(4), 1996 SSR LEXIS 4, www.ssa.gov/OP_Home/ rulings/di/01/SSR96-07-di-01.html (visited Jan. 4, 2012), which states that "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." The applicant's credibility thus cannot be ignored in determining her ability to work (her residual functional capacity, in SSA-speak).

*Id.* at 645-646. Although not binding law on this Circuit, the Court finds the Seventh Circuit's views on this issue highly persuasive. Although the ALJ's full opinion may reflect support for his view of credibility of the Plaintiff's statements, the use of the boilerplate language calls into significant question whether the proper decisional process was undertaken by the ALJ in both reaching his Residual Function Capacity determination and evaluating the Plaintiff's credibility.

In light of these questions, the Court believes it is prudent to remand this case to the ALJ to clarify this matter. This determination is consistent with other courts in this Circuit. For example, United States Magistrate Judge James G. Welsh of the Western District of Virginia, when dealing with substantively similar boilerplate language as in this case, found:

> On appeal the plaintiff's first assignment of administrative error is based on the ALJ's use of circular reasoning in making his assessment of the plaintiff's testimonial credibility. (Dkt, #12, p. 5). As he argues in his brief, the ALJ's written decision finding that his testimony was less than fully credible was based entirely on the ALJ's own conclusion that he retained the ability to work on a regular and sustained basis. In other words, the ALJ assumed that which he wished to prove --- the logical fallacy of *petition principii*. By resorting to this form of circular reasoning, the ALJ credibility finding is simply an assertion by him that his functional capacity assessment is a true statement and any contrary statement is, therefore, untrue. Manifestly, an ALJ's credibility statement cannot be used to prove itself. Its premise lacks a source of reason for its truth different from that of the conclusion. Thus premised on a logical fallacy, the conclusion is not based on substantial evidence.

*Duff v. Astrue*, No. 5:11cv00103, ECF No. 18, at *9 (W.D.Va. Nov. 30, 2012).

It is precisely this fallacy which concerns the Court in this case. Further, an ALJ's "bare conclusion" that a claimant's "statements lack credibility because they are inconsistent with 'the above residual functional capacity assessment' does not discharge the duty to explain" their decision under SSA Policy and Fourth Circuit precedent. *See Kotofski v. Astrue*, No. SKG-09-981, 2010 WL 3655541, at *9 (D.Md. Sept. 14, 2010). While this Court is aware of other courts that have found that, despite the use of boilerplate language, enough evidence was referenced by the ALJ in his decision to support it, the Court cannot find that the ALJ adequately made a proper Residual Function Capacity determination or evaluated the credibility of the Plaintiff's statements.[4] In fact, it appears that the ALJ undertook his RFC determination before he properly

---

[4] *Cf Racey v. Astrue*, No. 5:12cv00036, 2013 WL 589223, at *6 (W.D.Va.) (W.D.Va., Feb. 13, 2013) ("The undersigned agrees with plaintiff and Judges Welsh and Posner that the boilerplate template used by the Social Security Administration reveals little about how the Law Judge considered and evaluated plaintiff's testimony. However, it is clear that in the pages that follow the boilerplate language in this case, the Law Judge considered the

8

weighed Plaintiff's credibility. Therefore, the Court finds that the ALJ's factual findings, as currently constituted, are not supported by substantial evidence. It should be quite clear to the Social Security Administration at this point that rather than saving time or effort, the boilerplate language at issue creates more questions and problems than it solves.

## IV. CONCLUSION

For the reasons above, the Magistrate Judge's Report and Recommendation is **ADOPTED**. Plaintiff's Motion for Summary Judgment (ECF No. 8) or, in the Alternative, Motion for Remand (ECF No. 9) is **GRANTED** and the decision of the Administrative Law Judge is hereby **VACATED** and **REMANDED** for proceedings consistent with this Memorandum Opinion and Order. Further, Defendant's Motion for Summary Judgment (ECF No. 11) **IS DENIED**. The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
June 6, 2013

Raymond A. Jackson
United States District Judge

---

evidence of record and provided sufficient support for both his RFC finding and his determination of plaintiff's credibility regarding the limiting effects of her condition").